UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

LANCER INSURANCE COMPANY,

                Plaintiff,

                                                                            Case No. 16-cv-0966-bhl

     v.

PERSONALIZED COACHES INC, et al.,

                Defendants.

---

## DECISION AND ORDER

---

        On February 29, 2016, father and son, Christopher J. Koleno (Koleno) and Christopher A. Koleno, Sr. (Koleno's son), were performing maintenance on an out-of-service bus owned by Personalized Coaches, Inc. (Personalized) when the bus rolled forward, injuring the father and killing the son. ECF No. 1 at 3–4. In this lawsuit, Personalized's insurer, Lancer Insurance Company (Lancer), seeks a declaration that it does not owe coverage either to Personalized or to Koleno and his son's surviving spouse, Lisa M. Koleno (collectively, the Koleno Defendants), for any claims arising out of the accident. *Id.* at 1, 3–4, 13–14. Lancer has filed a motion for summary judgment, ECF No. 27, which Personalized and the Koleno Defendants[1] oppose. ECF Nos. 32, 36. For the reasons given below, the Court grants Lancer's motion and directs the clerk to enter judgment in the insurer's favor.

## BACKGROUND

        Lancer is an insurance company incorporated under the laws of the State of Illinois, with its principal place of business in Long Beach, New York. ECF No. 20 ¶ 1. Personalized is a coach and charter bus services business incorporated under the laws of the State of Wisconsin, with its principal place of business in Waldo, Wisconsin. *Id.* ¶¶ 2, 10. Lancer issued two liability insurance

---

[1] Christopher J. Koleno (the father) and Lisa M. Koleno (the deceased son's surviving spouse) share counsel. Counsel's opposition to Lancer's motion purports to respond only on behalf of Lisa Koleno, and not on behalf of Christopher J. Koleno. *See* ECF No. 36. Because the Court concludes there is no coverage under the relevant policies for either party in any event, it will treat the opposition as applying to any claims by either of the Koleno Defendants.

policies to Personalized: (1) a Commercial General Liability policy (the CGL Policy); and (2) a Business Auto Liability policy (the Auto Policy). *Id.* ¶¶ 8–9.

The CGL Policy is identified under policy number GL157614#5 and has effective coverage dates of July 22, 2015 through July 22, 2016. *Id.* ¶ 8. Subject to policy exclusions, the CGL Policy provides Bodily Injury and Property Damage Liability coverage for "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." *Id.* at 5–6. It also provides Medical Payments coverage for medical expenses for bodily injury caused by an accident, regardless of fault, at the insured's premises, on ways next to the premises, or because of the insured's operations, subject to certain provisos. *Id.* at 6–7. The Medical Payments coverage is also subject to enumerated policy exclusions. *Id.*

The Auto Policy is identified under policy number BA163962#5 and has effective coverage dates of July 22, 2015 through July 22, 2016. *Id.* ¶ 9. Subject to policy exclusions, the Auto Policy provides Liability Coverage for "all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.'" *Id.* at 9–11. Covered autos include those designated autos identified in the policy's Declarations pages, along with certain "Hired" and "Nonowned" Autos. *Id.* at 9. The Auto Policy also includes both a Form MCS-90B Endorsement, providing coverage required by Section 18 of the Bus Regulatory Reform Act of 1982, and a Form F Uniform Motor Carrier Bodily Injury and Property Damage Liability Insurance Endorsement. *Id.* at 11, 12.

At all relevant times, Personalized owned several buses, including a 1995 MCI charter bus identified by vehicle number 1M8SDMMA1SP047041 (the Subject Bus). *Id.* ¶¶ 10–11. The Subject Bus had been completely out of use for approximately a year before the February 2016 accident, with its last ride as a charter bus having occurred no later than April 2015. ECF No. 31 ¶ 23 (citing ECF No. 30-1 at 46). Accordingly, the Subject Bus was not scheduled or otherwise listed among the insured vehicles in the Auto Policy when the accident occurred. ECF No. 20 ¶ 12.

At all relevant times, Personalized employed Christopher J. Koleno, who is a citizen and resident of the Village of Elkhart Lake, Wisconsin. *Id.* ¶¶ 3, 13. Koleno began working on the engine and transmission of the Subject Bus around Thanksgiving 2015. ECF No. 31 ¶ 8. Before beginning this work, Koleno told his boss, John Jeske, that he would need assistance with the

project. *Id.* ¶ 9. Jeske authorized him to find people outside Personalized to assist, and Koleno then enlisted his son, Christopher A. Koleno, Sr., to help with the repairs. *Id.* ¶¶ 10–11. Koleno's son was not employed by Personalized and did not receive any compensation from Personalized. *Id.* ¶ 15. On or about February 29, 2016, Koleno and his son were working on the Subject Bus at Personalized's place of business when the bus rolled forward, injuring Koleno and killing his son. *Id.* ¶¶ 16–17; ECF No. 20 ¶¶ 15–16; ECF No. 35 at 12–16.

## LEGAL STANDARD

Summary judgment is appropriate if the record shows there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must determine whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is "material" if, under the governing law, it could have an effect on the outcome of the lawsuit. *Id.* at 248; *Contreras v. City of Chicago*, 119 F.3d 1286, 1291–92 (7th Cir. 1997). A dispute over a material fact is "genuine" only if a reasonable trier of fact could find in favor of the non-moving party on the evidence presented. *Anderson*, 477 U.S. at 248.

The moving party bears the burden of proving the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). To survive a properly supported summary judgment motion, the opposing party must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). If the parties assert different views of the facts, the Court must view the record in the light most favorable to the non-moving party. *E.E.O.C. v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000).

Under Wisconsin law, an insurance policy is a contract. *Kemper Indep. Ins. Co. v. Islami*, 2021 WI 53, ¶ 17, 397 Wis. 2d 394, 406, 959 N.W.2d 912, 918. "The interpretation of an insurance policy is a question of law when no extrinsic evidence is introduced to interpret the wording of the policy." *Frost ex rel. Anderson v. Whitbeck*, 2002 WI 129, ¶ 5, 257 Wis. 2d 80, 85, 654 N.W.2d 225, 227. The Court's role in interpreting insurance policies is "to effectuate the intent of the contracting parties" and to construe the language "as it would be understood by a reasonable person in the position of the insured." *Estate of Sustache v. Am. Family Mut. Ins. Co.*, 2008 WI 87, ¶ 19, 311 Wis. 2d 548, 751 N.W.2d 845 (internal quotations and citations

omitted); *see also Kremers-Urban Co. v. Am. Employers Ins. Co.*, 119 Wis. 2d 722, 735, 351 N.W.2d 156 (1984); *Rural Mutual Ins. Co. v. Welch*, 2001 WI App 183, ¶ 12, 247 Wis. 2d 417, 633 N.W.2d 633. Courts do not construe policies to cover risks insurers did not contemplate or underwrite and for which they did not receive a premium. *Sustache*, 2008 WI 87 ¶ 19. Any doubts or ambiguities must be resolved against the insurer and in favor of the insured and coverage. *Rural Mut. Ins. Co. v. Welch*, 2001 WI App 183 ¶ 6; *Schroeder v. Blue Cross & Blue Shield*, 153 Wis. 2d 165, 173, 450 N.W.2d 470 (Ct. App. 1989); *see also Bartel v. Carey*, 127 Wis. 2d 310, 314, 379 N.W.2d 864 (Ct. App. 1985). Further, when construing insurance policies, words "are given their common and ordinary meaning." *J.G. v. Wangard*, 2008 WI 99, ¶ 22, 313 Wis. 2d 329, 753 N.W.2d 475 (citing *Danbeck v. Am. Family Mut. Ins. Co.*, 2001 WI 91, ¶ 10, 245 Wis. 2d 186, 629 N.W.2d 150). And, if the terms of the insurance contract are plain on their face, no resort is made to the rule of construction or to case law. *Paape v. Northern Assurance Co.*, 142 Wis. 2d 45, 51, 416 N.W.2d 665, 668 (Ct. App. 1987). The rules of construction applied to insurance policies are the same as those applied to other contracts. *Sustache*, 2008 WI 87 ¶ 19.

Wisconsin law uses a three-step analysis to determine whether coverage exists. Courts look first at a policy's initial grant of coverage, then at the exclusions, and, finally, at any exceptions to the exclusions. *Schinner v. Gundrum*, 2013 WI 71, ¶ 37, 349 Wis. 2d 529, 833 N.W.2d 685 (citing *Sustache*, 2008 WI 87 ¶ 22); *see also Am. Family Mut. Ins. Co. v. Am. Girl, Inc.*, 2004 WI 2, ¶ 24, 268 Wis. 2d 16, 673 N.W.2d 65. If the Court determines that the initial grant of coverage does not cover the asserted claims, it is unnecessary to examine the policy's exclusions and the analysis concludes. *Schinner*, 2013 WI 71 ¶ 37; *Sustache*, 2008 WI 87 ¶ 22; *Am. Girl*, 2004 WI 2 ¶ 24. If the initial grant of coverage covers the claim(s) presented, courts examine the policy's exclusions to determine whether any of them withdraw coverage. *Schinner*, 2013 WI 71 ¶ 37 (citing *Wadzinski v. Auto-Owners Ins. Co.*, 2012 WI 75, ¶ 14, 342 Wis. 2d 311, 818 N.W.2d 819); *see also Am. Girl,* 2004 WI 2 ¶ 24. Exclusions are to be narrowly construed against the insurer and ambiguities are to be resolved in favor of coverage. *Smith v. Atlantic Mut. Ins. Co.*, 155 Wis. 2d 808, 811, 456 N.W.2d 597, 598 (1990).

# ANALYSIS

## I. The CGL Policy Provides No Coverage to Defendants for Claims Related to the Accident.

With respect to Defendants' claims against the CGL Policy, Lancer cites three policy exclusions—the Workers' Compensation, Co-Employee/Volunteer Worker, and Auto exclusions—that, it contends, preclude coverage. ECF No. 28 at 9–11. Defendants offer different responses. Personalized, as policyholder, admits its claims are not covered by the CGL Policy (it argues solely for coverage under the Auto Policy). *See* ECF No. 32 at 2–9. The Koleno Defendants, on the other hand, contend their claims are covered.

The Koleno Defendants first acknowledge that the CGL Policy's Auto Exclusion bars coverage with respect to the policy's Bodily Injury and Property Damage Liability provisions. *See* ECF No. 36 at 1. Instead, they focus on the broad grant of coverage in the policy's Medical Payments provisions. *Id.* at 5. They argue that, because Christopher A. Koleno Sr. was a volunteer worker and does not have relevant benefits under a workers' compensation or disability benefits law or a similar law, neither the Co-Employee/Volunteer Worker nor Workers' Compensation exclusions to the Medical Payments coverage apply. *Id.* at 5–6.[2]

This argument might carry the day if these were the only exclusions applicable to the Medical Payments coverage, but they are not. As Lancer notes in its response, Section 2(g) of the Medical Payments provisions expressly incorporates all exclusions listed under the Bodily Injury and Property Damage Liability provisions. ECF No. 40 at 2. This incorporation brings into play an exclusion for "'[b]odily injury' . . . arising out of the . . . maintenance . . . of any . . . 'auto' . . . owned . . . by . . . any insured." ECF No. 40 at 2 (referencing the CGL Policy Coverage A Section 2(g) (the Auto Exclusion), ECF No. 1-1 at 7). Also incorporated is an exclusion for claims by the child of an employee who suffers "'bodily injury' . . . arising out of and in the course of . . . [e]mployment by the insured[,] or [p]erforming duties related to the conduct of the insured's business." ECF No. 28 at 3–4, 10 (referencing the CGL Policy Coverage A Section 2(e), ECF No. 1-1 at 7).

---

[2] *See* CGL Policy Coverage C Medical Payments Sections 1(a) and 1(b), ECF No. 1-1 at 13 ("We will pay medical expenses as described below for 'bodily injury caused by an accident . . . [o]n premises you own or rent. . . . We will make these payments regardless of fault. . . . We will pay reasonable expenses for . . . [f]irst aid administered at the time of an accident[,] . . . [n]ecessary medical, surgical, [and] X-ray services[,] [and] [n]ecessary ambulance, hospital, professional nursing[,] and funeral services.").

Lancer is thus correct that the Koleno Defendants' claims are excluded. Under the plain language of Section 2(g), and the incorporated exclusions of Coverage A Sections 2(e) and 2(g), there is no coverage for any claims by Koleno's deceased son or his estate. *See* ECF No. 28 at 9–12; ECF No. 40 at 2. The Koleno Defendants' argument that other exclusions are inapplicable is beside the point. Not every exclusion needs to apply; if even one exclusion applies, there is no coverage. Because Personalized concedes it is not entitled to coverage under the CGL Policy and the record establishes that any claims by the Koleno Defendants are excluded from coverage, Lancer is entitled to summary judgment with respect to its request for declaratory relief on the CGL Policy.

## II. The Auto Policy Also Does Not Cover Defendants' Claims.

With respect to the Auto Policy, Lancer argues there can be no coverage because the Subject Bus was not a "covered auto" under this policy. ECF No. 28 at 9, 12–13. Both Personalized and the Koleno Defendants dispute Lancer's position. All Defendants concede that the Subject Bus was not listed as a covered auto. But Personalized argues that coverage is nevertheless available under two policy endorsements: the MCS-90B and Form F endorsements. ECF No. 32 at 3–9. The Koleno Defendants join these arguments, ECF No. 36 at 7–10, while also offering two other pleas for reading the policy broadly to provide coverage. *Id.* at 10–17. Based on the plain terms of the Auto Policy, including its endorsements, the Court rejects Defendants' arguments.

### A. The MCS-90B Endorsement Does Not Provide Coverage to Defendants Because the Accident Did Not Occur During Interstate Travel.

Personalized first argues that the Auto Policy's MCS-90B Endorsement extends coverage even though the Subject Bus was out-of-service and not listed among the "covered autos" on the policy's Declarations pages. ECF No. 32 at 3–5. In relevant part, the MCS-90B Endorsement states the following:

> In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment received against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to financial responsibility requirements of Section 18 of the Bus Regulatory Reform Act of 1982 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any

> territory authorized to be served by the insured or elsewhere. Such insurance as is afforded, for public liability, does not apply to injury to or death of the insured's employees while engaged in the course of their employment, or property transported by the insured, designated as cargo. It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of liability herein described, irrespective of the financial condition, insolvency or bankruptcy of the insured.

*Id.* at 3–4 (referencing the Auto Policy, ECF No. 1-2 at 70; 49 C.F.R. § 387.39). Personalized argues that, since the accident "result[ed] from negligence in the operation, maintenance or use of motor vehicles," and since the MCS-90B Endorsement applies "regardless of whether . . . each motor vehicle is specifically described in the policy [and regardless of where the negligence occurred]," the Auto Policy provides coverage. ECF No. 32 at 4–5. The Koleno Defendants make a similar although less developed argument. ECF No. 36 at 7–8, 10.

In response, Lancer argues that the MCS-90B Endorsement affords coverage only to liability arising from interstate commerce or travel as required by 49 U.S.C. § 31138(a)(1). ECF No. 28 at 13–16. Since the claims or potential claims in this case involve an out-of-service bus that was not engaged in interstate commerce or travel—indeed the bus was incapable of such use—Lancer insists the MCS-90B Endorsement cannot create coverage. ECF No. 38 at 2. In support of this position, it cites a number of court decisions declining to expand coverage under the MCS-90B Endorsement for accidents involving mere intrastate, rather than interstate, travel. ECF No. 38 at 2 (citing *Lyons v. Lancer Ins. Co.*, 681 F.3d 50 (2d Cir. 2012); *Martinez v. Empire Fire & Marine Ins. Co.*, 322 Conn. 47, 49, 139 A.3d 611, 618 (2016) ("Because we conclude that the MCS–90 endorsement applies only to liability for accidents involving vehicles traveling in interstate commerce, we then consider whether the trip at issue in the present case was interstate in nature." *Id.* at 55.))[3]

Applying the basic insurance policy interpretation methodology required under Wisconsin law, the Court agrees with Lancer. The plain language of the MCS-90B Endorsement specifically

---

[3] In the alternative, Lancer also argues that the MCS-90B Endorsement does not extend coverage to Koleno's injuries, since the endorsement disclaims application to the injury or death of the insured's employees. ECF No. 38 at 2 (citing the Auto Policy, ECF No. 1-2 at 70). The Court agrees, but, because it accepts Lancer's primary argument, reaching this additional basis is unnecessary.

makes it "subject to [the] financial responsibility requirements of Section 18 of the Bus Regulatory Reform Act of 1982." Auto Policy, ECF No. 1-2 at 70. Section 18 of the Bus Regulatory Reform Act states in relevant part:

> The Secretary of Transportation shall establish regulations to require minimal levels of financial responsibility sufficient to satisfy liability amounts to be determined by the Secretary covering public liability and property damage for the transportation of passengers for hire by motor vehicle in the United States *from a place in a State to a place in another State, from a place in a State to another place in such State through a place outside of such State, and between a place in a State and a place outside of the United States*.

Bus Regulatory Reform Act of 1982, Pub. L. No. 97–261, § 18, 96 Stat. 1102, 1120 (1982) (codified as amended at 49 U.S.C. § 10927, note (1988), renumbered 49 U.S.C. § 31138 in 2006 Code) (emphasis added). In short, the statute exercises Congress' regulatory power in a limited fashion solely over motor carriers involved in the interstate transportation of passengers for hire. That limited exercise of power specifically extends only to transportation across state lines.

In *Lyons*, the Second Circuit confirmed this interpretation. In *Lyons*, a bus driver who regularly transported students to and from a junior high school was involved in an accident while taking students to their drop-off locations one afternoon. 681 F.3d at 52. Individuals harmed by the accident brought a claim against the insurance company of the carrier that owned and operated the bus, seeking a judgment under federal statutory law, including Section 18 of the Bus Regulatory Reform Act and the regulations promulgated thereunder. *Id.* at 52–53. As in this case, the bus involved in the accident was insured by Lancer Insurance Company, and the relevant insurance policy included an MCS-90B Endorsement. *Id.* at 53. Even though the transportation of the students involved only intrastate travel, the *Lyons* plaintiffs argued that the insurance company was liable under the MCS-90B Endorsement because the carrier had a separate contract to transport senior citizens on an interstate trip during the same afternoon when the accident occurred. *Id.* at 53–55. The Court ultimately concluded that the MCS-90B Endorsement did not apply because the carrier intended two trips, one intrastate and one interstate, and the accident had occurred during the former. *Id.* at 60.

Defendants cite no caselaw and offer no response to Lancer's argument for the limited application of the MCS-90B Endorsement. While *Lyons* is a Second Circuit—not Seventh Circuit—case, its reasoning is persuasive. Indeed, the facts here are more plainly outside the terms

of the MCS-90B Endorsement and Section 31138(a)(1) than those in *Lyons*. The accident in *Lyons* involved a bus that was operational and transporting passengers, albeit in intrastate travel. 681 F.3d at 52, 60. The accident involving the Subject Bus here did not take place in connection with any transport of passengers, whether intrastate or interstate in nature. Indeed, the Subject Bus was an out-of-service vehicle being repaired in a garage. Because the MCS-90B Endorsement is subject to the financial responsibility language in Section 31138(a)(1), and that language is expressly limited to liability and property damage for the transportation of passengers for hire between different states, the MCS-90B Endorsement cannot be used to impose coverage here.

> **B.** **The Form F Endorsement Does Not Provide Coverage to Defendants Because the Kolenos' Repair of the Subject Bus Was Not a "Negligent Operation" Under Wis. Stat. § 194.41.**

Personalized next argues that the Form F Uniform Motor Carrier Bodily Injury and Property Damage Liability Insurance Endorsement (the Form F Endorsement) also extends coverage for claims arising from the accident. ECF No. 32 at 6–9. This endorsement is required under state law and, similar to the federal MCS-90B Endorsement, mandates that the insurer provide liability coverage to motor carriers in certain circumstances. In relevant part, the Form F Endorsement states the following:

> The certification of the policy, as proof of financial responsibility under the provisions of any State motor carrier law or regulations promulgated by any State Commission having jurisdiction with respect thereto, amends the policy to provide insurance for automobile bodily injury and property damage liability in accordance with the provisions of such law or regulations to the extent of the coverage and limits of liability required thereby[.]

*Id.* at 6 (referencing the Auto Policy, ECF No. 1-2 at 72). The Form F Endorsement incorporates the provisions of Wis. Stat. Ch. 194 into the Auto Policy. Section 194.41 requires a motor carrier to be covered by an insurance policy that will pay for damages recoverable "against the owner or operator" because of "negligent operation." Wis. Stat. § 194.41(1). This coverage extends to all of the insured's vehicles, "regardless of whether the vehicle is specifically listed in the policy." *Rural Mut. Ins. Co. v. Peterson*, 134 Wis. 2d 165, 395 N.W.2d 776 (1986) (citing Wis. Stat. § 194.41).

Personalized argues that the Form F Endorsement should be constructed liberally so as to provide coverage to Defendants. ECF No. 32 at 6–9. It cites Wis. Stat. § 194.02, which states:

> The legislature intends to let the market promote competitive and efficient transportation services, while maintaining the safety regulations necessary to protect the welfare of the traveling and shipping public. It is the intent of the legislature that [Wis. Stat. Ch. 194] be interpreted in a manner which gives the most liberal construction to achieve the aim of a safe, competitive transportation industry.

*Id.* Personalized also invokes the Wisconsin Supreme Court's decision in *Mullenberg v. Kilgust Mech., Inc.*, 2000 WI 66, ¶¶ 12–15, 235 Wis. 2d 770, 775–78, 612 N.W.2d 327, 330, 330–31. ECF No. 32 at 7–9. In *Mullenberg*, the Wisconsin Supreme Court interpreted Section 194.41's "negligent operation" language to include situations involving loading and unloading. 2000 WI 66 ¶¶ 12–15. According to Personalized, the Kolenos' maintenance and repair of the Subject Bus is analogous to the loading and unloading in *Mullenberg* and thus the Court should interpret the Form F Endorsement to extend coverage to Personalized's claims relating to the accident. ECF No. 32 at 8–9 (citing 2000 WI 66 ¶¶ 12–15).

The Koleno Defendants ask for an even broader interpretation. In addition to *Mullenberg*, they cite the Wisconsin Court of Appeals' decision in *Bauer v. Century Sur. Co.* and insist Wisconsin courts have ruled that even accidents occurring during a vehicle's maintenance and repair fall within the *Mullenberg* rule. ECF No. 36 at 9–10 (citing *Bauer v. Century Sur. Co.,* 2006 WI App 113, ¶¶ 6–16, 293 Wis. 2d 382, 386–91, 718 N.W.2d 163, 165–67).

In response, Lancer notes that the Subject Bus was not operational and thus argues the Kolenos' maintenance and repair of the out-of-service vehicle cannot be "negligent operation" under the Form F Endorsement. ECF No. 38 at 3. Lancer also rejects the suggestion that Wisconsin law has expanded the term "negligent operation" to include instances of maintenance and repair and insists that doing so would place unforeseen and unreasonable burdens on insurers. *Id.* at 3–4. Finally, Lancer argues that the Kolenos were not members of "the traveling and shipping public" within the meaning of Section 194.41. *Id.* at 3–5 (citing Wis. Stat. § 194.02).

The Court agrees with Lancer that "negligent operation" for purposes of the Form F Endorsement and Section 194.41 does not include the maintenance and repair of the Subject Bus. While Personalized and the Koleno Defendants are correct that the Wisconsin Supreme Court in *Mullenberg* interpreted the term "operation" in Section 194.41 to include instances of loading and unloading, in adopting that interpretation, the Court explained that its reading hinged on an amendment to Chapter 194 that excised the phrase "use of the highways." 2000 WI 66 ¶¶ 12–15.

This excision undercut the Court's reasoning in prior decisions, which had excluded instances of loading and unloading. *Id.* The Court further reasoned that loading and unloading passengers and property is an "[i]nherent . . . task" that "motor carrier[s] by definition undertake[]" during the "operation" of a vehicle. *Id.* ¶ 15.

Based on the reasoning in *Mullenberg*, Defendants' proposed interpretation of the Form F Endorsement must be rejected. The particular instance of maintenance and repair that resulted in the accident at issue in this case did not involve an activity inherent in the operation of a vehicle in the same vein as the loading and unloading of passengers and property discussed in *Mullenberg*. Indeed, the undisputed facts establish that the Kolenos were conducting maintenance and repair on a vehicle that had long been *out of operation* at the time of the accident. *See* ECF No. 31 ¶ 23. It is undisputed that Personalized had not used the Subject Bus as a charter since either April of 2014 or 2015—in either event, well before the accident. *Id.* (citing ECF No. 30-1 at 46); ECF No. 36 at 1–2. Moreover, the persons injured, Koleno and his son, were not members of "the traveling and shipping public," the persons Wis. Stat. Ch. 194 was intended to protect. *See* Wis. Stat. § 194.02; *Rural Mut. Ins. Co. v. Peterson*, 134 Wis. 2d at 177–78 (holding that "[t]he policy of [Wis. Stat. § 194.41] is to assure recoverable compensation to members of the public injured by common carriers, not to allow an insured to reap the benefits of liability insurance coverage for which the insured has not paid").[4]

### C. The Koleno Defendants' Additional Policy Interpretation Arguments Regarding the Auto Policy Coverage Also Fail.

The Koleno Defendants next ask the Court to rewrite the terms of Lancer's policy to provide coverage for their claims because, they contend, Personalized had a reasonable expectation of coverage sufficient to create coverage. ECF No. 36 at 10–12 (citing *Kremers-Urban Co.*, 119 Wis. 2d at 735). They point to specific policy language in the Auto Policy, asserting that this language created "a reasonable expectation of flexibility with respect to the coverage provided by Lancer." *Id.* (citing, e.g., the Auto Policy, ECF No. 1-2 at 3 ("This policy maybe [sic] subject to final audit."); also citing several uses of the word "estimated" (*see, e.g.*, Auto Policy, ECF No. 1-2 at 3)).

---

[4] The Koleno Defendants also misconstrue *Bauer*. That case analyzed whether a certain fact pattern included an instance of unloading that would have been covered by *Mullenberg*. *Bauer,* 2006 WI App 113 ¶¶ 2–16. The *Bauer* court's analysis did not extend *Mullenberg* to instances of maintenance and repair, or even discuss maintenance and repair. *See id.*

This argument fails first and foremost because, as Lancer observes, the policyholder in this case is Personalized and Personalized does not suggest that it reasonably expected coverage beyond the terms of the policy. ECF No. 40 at 6. Moreover, by definition, a policyholder's expectations are sufficient to tip the balance in favor of coverage only if they are reasonable. *See Bartel*, 127 Wis. 2d at 314–15 ("While policy provisions tending to limit liability must be construed against the insurer, . . . a policy may not be construed to bind the insurer to a risk which it did not contemplate and for which it received no premium."). Here, a reasonable person in the position of the insured would not interpret the plain language cited by the Koleno Defendants as extending coverage to Defendants.

The Koleno Defendants also try to expand coverage by arguing that over the course of the Subject Bus's maintenance and repair the Subject Bus was sufficiently operable such that it became an "acquired auto" entitled to coverage under the Auto Policy. ECF No. 36 at 12–17. Under the Auto Policy, an "auto" that is later acquired will be a covered auto for a particular coverage only if:

> a. We already cover all "autos" that you own for that coverage or it replaces an "auto" you previously owned that had coverage; and
>
> b. You tell us within 30 days after you acquire it that you want us to cover it for that coverage.

Auto Policy, ECF No. 1-2 at 30–31. Based on this language and the Wisconsin Supreme Court's decision in *American Family Mut. Ins. Co. v. Bateman*, the Koleno Defendants argue that the Subject Bus was an acquired auto even though no 30-day notice was provided. ECF No. 36 at 16–17 (citing 2006 WI App 251 ¶ 15, 297 Wis. 2d 828, 839, 726 N.W.2d 678, 683).

Lancer insists the Subject Bus was not an acquired auto and the Koleno Defendants have misstated the holding in *Bateman*. ECF No. 40 at 7–8. The Court again agrees with Lancer. As an initial matter, it is far from clear that a fully repaired vehicle already owned by Personalized would constitute an "acquired auto" within the meaning of the policy. But even if this issue could be resolved in Defendants' favor, there is no evidence that Personalized gave notice to Lancer sufficient to bring the Subject Bus within the Auto Policy's coverage. Nothing in *Bateman* suggests the Court has authority to write the notice requirement out of the Lancer policy. To the contrary, in *Bateman*, the Wisconsin Court of Appeals simply held that for "automatic insurance

clauses" like the one at issue here, notice is a condition subsequent rather than a condition precedent. *Bateman*, 2006 WI App 251 ¶ 15. If a policyholder notifies an insurance company that she wants to insure a newly acquired car and does so within the specified time period following acquisition, that car is covered even for accidents that occurred before the policyholder gave notice. *Id.* Personalized did not give notice within the specified 30 days following its supposed acquisition of the Subject Bus. The Koleno Defendants' argument therefore fails.

## CONCLUSION

For the reasons given above,

**IT IS HEREBY ORDERED** that Lancer's motion for summary judgment, ECF No. 27, is GRANTED. The clerk is directed to enter judgment in favor of Lancer.

Dated at Milwaukee, Wisconsin on November 16, 2021.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge
